IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| ASHLEY PATTON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 13-CV-2186-KHV-JPO |
| ENTERCOM KANSAS CITY, L.L.C., | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Entercom Kansas City, LLC ("Entercom"), moves this Court for summary judgment in its favor on both counts contained in Plaintiff's Complaint (Doc. 1). In her Complaint, Ashley Patton asserts claims for both false light/invasion of privacy and negligent supervision based on the airing of her name on KRBZ 96.5-FM "The Buzz," a radio station owned and operated by Entercom. There are no material facts in dispute. Ms. Patton's claim for false light/invasion of privacy is not actionable as a matter of law because Ms. Patton cannot meet her burden to prove that Entercom acted with knowledge of or "reckless disregard" as to the falsity of the broadcast. Further, Plaintiff cannot maintain an action for negligent supervision where the law provides another cause of action based on the same facts, nor can she maintain an action in negligence where she has not suffered cognizable physical injury. Accordingly, Entercom is entitled to summary judgment in its favor on Plaintiff's claims.

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

The following is a statement of material facts as to which there are no genuine issues.

1. Defendant operates a radio station called KRBZ 96.5-FM "The Buzz" which is located in Johnson County, Kansas. *Pretrial Order (Doc. 57), Stipulations of Fact ¶ 2(a)(3).*

2. The Buzz has a morning radio program known as "Afentra's Big Fat Morning Buzz." *Pretrial Order (Doc. 57), Stipulations of Fact ¶ 2(a)(4).*

3. During the "Afentra's Big Fat Morning Buzz" broadcast on April 20, 2012, on-air talent Afentra Bandokoudis (known as "Afentra") and Daniel Terreros (known as "Danny Boi") prompted listeners to send text messages into the radio station's "text line" of the names of persons that were said to be local porn stars. *Complaint (Doc. 1), at ¶ 15.*

4. A recording exists of the relevant portion of "Afentra's Big Fat Morning Buzz" radio program on April 20, 2012. *Pretrial Order (Doc. 57), Stipulations of Fact ¶ 2(a)(5).*

5. Two individuals, using separate telephone numbers, texted in the name "Ashley Patton" to the 96.5 "The Buzz" radio station text line on the morning of April 20, 2012. *Pretrial Order (Doc. 57), Stipulations of Fact ¶ 2(a)(6); <u>see also</u> Text Message Stream, attached as Exhibit A, at p. 3.*

6. The two persons who texted the name "Ashley Patton" to 96.5 "The Buzz" on April 20, 2012, Christopher Bradley and Cameron Sharp, have no connection to Entercom other than the fact that they listen to the station and "follow" the station on social media. *Pretrial Order (Doc. 57), Stipulations of Fact ¶ 2(a)(7); Deposition of Christopher Bradley, attached in relevant part as Exhibit B, at p. 6:6-7, 9:1 – 10:3; Deposition of Cameron Sharp, attached in relevant part as Exhibit C, at p. 8:2 – 4, 9:11 – 10:16.*

7. A text message sent from 913-620-6231 at 7:26:52 a.m. read "Ashley Patton Olathe south. 2007." This text message was sent by Christopher Bradley. *Pretrial Order (Doc. 57), Stipulations of Fact ¶ 2(a)(8); <u>see also</u> Text Message Stream, Exh. A, at p. 3.*

8. A text message from 913-449-8510 at 7:28:33 a.m. read "Ashley pattons a whore!!!!" This text message was sent from a phone number used by Cameron Sharp and was

2

not read aloud on the air. *Pretrial Order (Doc. 57), Stipulations of Fact ¶ 2(a)(9); see also Text Message Stream, Exh. A, at p. 3; Audio CD Transcription, attached as Exhibit D, at p. 3-4.*

9. Danny Boi performed a "Google" search to attempt to verify the information submitted by text message. That search returned pornographic images or videos of a person with a similarly-spelled name, "Ashley Payton." *Deposition of Daniel Terreros, attached in relevant part as Exhibit E, at p. 13:16 – 22:23.*

10. Danny Boi stated Ashley Patton's name on-air once at approximately 7:27 a.m. *Complaint (Doc. 1), at ¶ 18; Audio CD Transcription, Exh. D, at p. 3.*

11. The on-air talent stated during the broadcast that they would put a list of "alleged" porn stars on the radio station's website:

> Afentra: …Its *unofficial*, the *unofficial* porn list of Kansas City Metro.
>
> Danny Boi: The *alleged* text line porn list for the Kansas City Metropolitan area.
>
> Afentra: Yeah, cause we can't, *can't confirm or deny* right?
>
> Danny Boi: Nope.

*See Audio CD Transcription, Exh. D, at p. 4 (emphasis added).*[1]

12. Plaintiff is not aware of any person who heard her name on the April 20, 2012 "Afentra's Big Fat Morning Buzz" radio program and believed the reference to her name was actually true. *Pretrial Order (Doc. 57), Stipulations of Fact ¶ 2(a)(10).*

13. The radio broadcast on April 20, 2012 has not affected plaintiff's familial relationships, friendships, personal relationships, jobs or internships, job prospects, or academics/grades. *Pretrial Order (Doc. 57), Stipulations of Fact ¶ 2(a)(11).*

---

1  A recording of the actual audio is available if the Court would prefer to listen to the original recording in lieu of reviewing this transcript.

14. Plaintiffs' only damages are generalized anxiety, waking during the night, and generally being more emotional and irritable. *Deposition of Ashley Patton, attached in relevant part as Exhibit F, at p. 133:5 – 25.*

15. Three months after the broadcast, on July 19, 2012, Plaintiff saw a physician regarding trouble sleeping. She did not, however, inform her physician that her trouble sleeping was in any way connected to the broadcast. To the contrary, Plaintiff's medical records indicate:

> Patient presents today to establish as a new patient her presenting complaint today is difficulty sleeping. The patient is in her first year of law school and her hours have been very erratic. She has gotten in the habit of going to bed at 10 and waking up at 2 or 3 times during the night. She denies any chest pain shortness of breath nausea vomiting diarrhea hematochezia hematemesis or melena. She denies any undue anxiety at this time…

*Progress Notes of Michael P. Raines, M.D., dated 07/19/2012, attached as Exhibit G.*

16. Plaintiff did not report anxiety and sleeplessness that she claimed was due to the broadcast to any physician until August 28, 2013, more than: (a) sixteen (16) months after the broadcast and (b) four (4) months after she filed her complaint in this matter. *Progress Note of Richard A. Ruiz, M.D., dated 08/28/2013, attached as Exhibit H.*

17. Plaintiff has not seen any counselor to address her alleged anxiety or sleeplessness, though that has been recommended by her doctor. *Deposition of Ashley Patton, Exh. F, at p. 119:12 – 22; 134:1 – 4.*

## SUMMARY JUDGMENT STANDARD

Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*quoting* FED. R. CIV. P. 1). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Bradley v. Val-Mejias,* 379 F.3d 892, 897 (10th Cir. 2004). When determining whether judgment as a matter of law is appropriate, "we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* (citations omitted). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

A "material" fact is one "that might affect the outcome of the suit under the governing law." *Id*. at 248. A "genuine" issue is one for which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Peterson v. Exide Corp.*, 123 F. Supp. 2d 1265, 1269 (D. Kan. 2000). "In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim." *Peterson,* 123 F. Supp. 2d at 1269.

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Id.*; see also *Anderson*, 477 U.S. at 256. The nonmoving party "may not simply rest upon its pleadings to satisfy its burden." *Id.* Instead, the nonmoving party "must set forth specific facts showing that there is a

genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990) (citations omitted); *Peterson*, 123 F. Supp. 2d at 1269.

More than a scintilla of evidence is required to demonstrate a genuine factual issue. *Anderson*, 477 U.S. at 252. If the nonmoving party's evidence is merely colorable or is not significantly probative, summary judgment should be granted. *Id.* at 249–250.

## ARGUMENT

### A. Entercom is Entitled to Summary Judgment On Ms. Patton's Invasion of Privacy Claim Because Entercom Did Not Air the Broadcast With Knowledge of Its Falsity or a Reckless Disregard to the Falsity of It.

In Count I of her Complaint, Ms. Patton asserts that the April 20, 2012 broadcast placed her in a false light, a type of invasion of privacy claim. "The false light cause of action is controversial and has been rejected altogether by some states." *Pfannenstiel v. Osborne Publishing Co.*, 939 F. Supp. 1497, 1504 fn. 5 (D. Kan. 1996) (citations omitted).

Kansas courts exercise "great caution in recognizing torts based on damage only to a plaintiff's emotional well-being." *Pfannenstiel*, 939 F. Supp. at 1504 (*citing Gobin v. Globe Pub. Co.,* 232 Kan. 1, 649 P.2d 1239 (1982) (holding that damages for mental anguish in defamation claim are "parasitic" in that they are available only if the plaintiff can prove damage to his/her reputation); *Grube v. Union Pacific R. Co.,* 256 Kan. 519, 522, 886 P.2d 845 (1994) (plaintiff can recover for negligent infliction of emotional distress only if he/she can prove some physical impact/injury)). Furthermore, "absent an actual malice element, the false light claim becomes nothing more than defamation, but without proof of damage to the plaintiff's reputation." *Id.* (*citing Arrington v. New York Times Co.,* 55 N.Y.2d 433, 449 N.Y.S.2d 941, 434 N.E.2d 1319 (1982), *cert. denied,* 459 U.S. 1146, 103 S.Ct. 787, 74 L.Ed.2d 994 (1983) (noting concern that false light action could potentially compromise freedom of the press by

"sidestepping the safeguards which restrain the reach of traditional public defamation litigation").

Nevertheless, Kansas courts have recognized an invasion of privacy claim based on false light publicity. *Pfannenstiel*, 939 F. Supp. 1497, 1502 (citations omitted). Unlike a defamation claim, which addresses damage to a plaintiff's reputation, the false light claim is based on a plaintiff's mental distress.[2] *Id*. Kansas has adopted the final version of the Restatement (Second) of Torts § 652E, which states:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) <u>the actor had *knowledge of* or acted in *reckless disregard* as to the falsity of the publicized matter and the false light in which the other would be placed</u>.

(emphasis added); *Pfannenstiel*, 939 F. Supp. at 1502; <u>see also</u> *Rinsley v. Brandt*, 700 F.2d 1304, 1307 (10th Cir. 1983).

To prove "reckless disregard," a plaintiff must prove that the defendant "'in fact entertained serious doubts as to the truth of [her] publication' or acted with 'a high degree of awareness of probable falsity.'" *Pfannenstiel*, 939 F. Supp. at 1504 (citations omitted). "<u>Proof of mere negligence is not enough</u>." *Id*. (emphasis added); *Tomson v. Stephan*, 699 F. Supp. 860,

---

2   Ms. Patton has not asserted *any* damages to her reputation. Ms. Patton admits that she has no evidence which might support any damages to her reputation as a result of the broadcast. SOF ¶¶ 12-13. Accordingly, Ms. Patton has not asserted a defamation claim. Nor could she. *Wright v. Bachmurski*, 29 P.3d 979, 984 (Kan. App. 2001) ("In Kansas, any plaintiff in a defamation action must allege and proof actual damages and may no longer rely on the theory of presumed damages").

7

866 (D. Kan. 1988). Likewise, "mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 332 (1974). Rather, the publisher must act with a "high degree of awareness of . . . probable falsity." *Id.*

A plaintiff must *prove* reckless disregard. A plaintiff cannot rely on mere speculation. *Pfannenstiel*, 939 F. Supp. at 1504. Notably, in *Pfannenstiel*, this Court held that the testimony of an expert, who opined that the defendant acted with reckless disregard by failing to live up to "basic journalistic standards," did not create a material issue of fact because basic journalistic practices is not the test, "high degree of awareness of probable falsity" is the test. *Id.*

Here, there is no evidence that might support a finding that Bandokoudis or Terreros intentionally included false information about Ms. Patton in the broadcast. Nor is there a scintilla of evidence in the record to support a finding that either seriously doubted the truth of what they said on the air or were highly aware that the information was probably false. The station indisputably received Ms. Patton's name from a listener, Christopher Bradley. SOF ¶¶ 5 - 7. Terreros sought to verify the accuracy by searching for Ms. Patton's name on the Internet, which resulted in Google results of an "Ashley Payton" as a pornographic film star. SOF ¶ 9. The spelling of "Ashley Patton" and "Ashley Payton" are obviously nearly identical, with the exception of one letter. Another listener, Cameron Sharp, also submitted Ms. Patton's name to the station. SOF ¶¶ 5 – 8. Although an unfortunate error, this hardly rises to the level of proof required to establish a "high degree of awareness of probable falsity" of the information submitted.

Further, a review of the entirety of the audio from the broadcast demonstrates the on-air talent did not represent that Ms. Patton was, in fact, an actual pornography star. Bandokoudis

and Terreros informed listeners that this was an "alleged" list of "local porn stars." SOF ¶ 11. Bandokoudis clarified on-air that the information had been submitted by listeners. SOF ¶ 11. Bandokoudis stated it was an "unofficial list" and Terreros noted it was an "alleged" list of local pornography stars. SOF ¶ 11. Again, this does not rise to the level of a "high awareness of probable falsity" as is required under the law for Plaintiff to prove her claim.[3] Accordingly, there is no evidence that Entercom had knowledge of or acted in reckless disregard of the falsity of the information it repeated on air, and Plaintiff's claim for false light invasion of privacy must be dismissed.

    **B.    Entercom is Entitled to Summary Judgment on Ms. Patton's Negligent Supervision Claim Because Kansas Courts Have Not Recognized Such a Claim in the False Light Context.**

In Count II of her Complaint, Ms. Patton alleges the radio station negligently supervised the on-air talent and, as result, allowed them to invade her privacy under a false light theory. That is, Ms. Patton's negligent supervision claim is based exclusively on her underlying false light claim. This claim is novel under Kansas law. While Kansas courts have recognized negligent supervision claims in some contexts, no Kansas court has recognized a claim in the context of an invasion of privacy claim. This Court should not be the first to do so, particularly given the higher standard of proof for false light claims under §652E and where the injuries claimed by Ms. Patton are not monetary, reputational or physical, but instead are merely alleged emotional injuries that, notably, did not appear until months after the broadcast.

While Kansas has recognized negligent retention or supervision claims in some limited contexts, it has not recognized them in all contexts. For example, in *Schweitzer-Reschke*, this Court rejected a negligent supervision claim "where the underlying wrongful conduct is sexual

---

[3] "A court should not consider words or elements in isolation, but should view them in the context of the whole [communication] to determine if they constitute an invasion of privacy." *Rinsley*, 700 F.2d at 1310.

harassment by an employee." *Schweitzer-Reschke v. Avnet, Inc.,* 874 F. Supp. 1187, 1197 (D. Kan. 1995). The court reasoned that where the law provided a specific remedy under a specific legal framework – there the Kansas Acts Against Discrimination and its very particular burden-shifting framework of proof – the Kansas courts "would not recognize a tort to accomplish the same purpose." *Id.* (citing *Polson v. Davis*, 895 F.2d 705, 709-10 (10th Cir. 1990).

Similarly, through her negligent supervision claim, Ms. Patton simply seeks to perform an end run around the knowledge of falsity or reckless disregard requirements of §652E. Like the 10th Circuit's rejection of a negligent supervision as a means to circumvent the specific requirements of employment discrimination and retaliation claims, this Court too should reject this "inventive cause of action [that] appears to be nothing more than an attempt to circumvent the strictures" of section 652E. *Polson v. Davis*, 895 F.2d 705, 710 (10th Cir. 1990). As noted by the court in *Fiscus v. Triumph Group Operations*, there may be some limited recognition in Kansas of negligent supervision claims in cases where negligent employees pose an "undue risk of harm;" however, this Court, as in *Fiscus*, should not "take a leap of faith across the chasm" that separates the tort of false light invasion of privacy from a negligent supervision claim. 24 F.Supp.2d 1229, 1243 (D. Kan. 1998).

The Court should be particularly reluctant to expand negligent supervision claims given the nature of injuries alleged in this case and for which Plaintiff seeks exaggerated damages. Kansas courts have been loathe to recognize claims based on claimed emotional injuries where the underlying conduct is alleged to be merely negligent. For example, a claim for negligent infliction of emotional distress (as opposed to claims for intentional or wanton conduct) cannot be maintained under Kansas law absent a physical injury – a physical injury that must occur "contemporaneously with or shortly after the incident causing emotional distress." <u>See</u> *Tyrell v.*

*Boeing Co. et al.*, No. 91-1285-FGT, 1994 WL 114841, at *12 (D. Kan. 1994). The purpose of the physical injury rule is to guard against fraudulent or exaggerated emotional distress claims. *Maddy v. Vulcan Materials Co.,* 737 F.Supp. 1528, 1534 (D. Kan. 1990); *Freeman v. Kansas State Network, Inc.,* 719 F.Supp. 995, 1001 (D. Kan. 1989). The rule also recognizes that emotional distress is a common experience in life and is usually trivial. Recovery is thus available only in those cases involving severe emotional distress evidenced and substantiated by actual physical injury. *Freeman,* 719 F.Supp. at 1001. Notably, in *Schweitzer-Reschke*, this Court rejected claims of physical impact based on claims of vomiting and diarrhea allegedly caused by sexually harassing conduct and a general feeling of anxiety, a feeling of shortness of breath, rapid heartbeat or a sense of "my lungs, like, collapsing, a feeling like I can't breathe," holding "these generalized complaints are insufficient to create an issue of fact regarding actual physical injury under Kansas law." 874 F.Supp. at 1197 (citing *Anderson v. Scheffler,* 242 Kan. 857, 860, 752 P.2d 667, 669 (1988) (even though plaintiff suffered shock, emotional pain, feelings of guilt, had recurring nightmares and visited a doctor for depression, he had not shown actual physical impact sufficient for claim of negligent infliction of emotional distress and generalized symptoms such as headaches, troubled sleep, difficulty concentrating and crying spells were insufficient to state a cause of action, even where plaintiff had visited with a counselor for treatment of her stress and other symptoms); *Hopkins v. State,* 237 Kan. 601, 612–13, 702 P.2d 311 (1985) (generalized physical symptoms of emotional distress such as headaches and insomnia are insufficient to state a cause of action).

Here, Plaintiff claims only generalized symptoms of anxiety, sleeplessness, and increased irritability, but did not see a doctor for these issues until three months after the April 2012 broadcast. SOF ¶¶ 13-15. At that time, Plaintiff did not claim any connection between those

alleged symptoms and the broadcast. To the contrary, Plaintiff reported to her physician problems with sleep due to her "erratic" law school schedule, denied feeling anxiety, and admitted she was experiencing no physical issues such as nausea, etc. SOF ¶ 15. Plaintiff did not report the anxiety and sleeplessness that she now claims are due to the broadcast to any physician until August 28, 2013 – approximately 16 months after the broadcast, well after she filed this lawsuit, and only after Defendant requested her medical records in the course of discovery in preparation for her deposition.[4] SOF ¶ 16. Plaintiff admits she has never seen a counselor to assist with her alleged anxiety and sleeplessness. SOF ¶ 17. Plaintiff admits the broadcast has not affected her familial relationships, friendships, personal relationships, jobs or internships, job prospects, or academics/grades and has not stopped her from participating in social events. SOF ¶¶ 12-13. As in *Schweitzer-Reschke*, these complaints are "insufficient to create an issue of fact regarding actual physical injury under Kansas law." 874 F.Supp. at 1197. Under these circumstances, the Court should not extend Kansas' law on negligent supervision to this false light invasion of privacy case.

---

4   Plaintiff's Complaint (Doc. 1) was filed on April 1, 2013. Defendant served Requests for Production seeking Plaintiff's medical records on July 30, 2013 (*See* Doc. 26).

## CONCLUSION

Plaintiff cannot maintain her claim for false light/invasion of privacy because, as a matter of law she cannot meet her burden to prove that Entercom acted with knowledge of or "reckless disregard" as to the falsity of the broadcast. Further, Plaintiff cannot maintain an action for negligent supervision where the law provides another cause of action based on the same facts, nor can she maintain an action in negligence where she has not suffered cognizable injury. Therefore, this Court should enter summary judgment in Entercom's favor and dismiss Plaintiff's Complaint.

DATED: February 28, 2014.

Respectfully Submitted:

**SEIGFREID BINGHAM, P.C.**

By /s/ Shannon D. Cohorst Johnson
 Frederick H. Riesmeyer, II D.Kan. #70401
 Shannon Cohorst Johnson D. Kan. #23496
 911 Main Street, Suite 2800
 Kansas City, Missouri 64105
 T: (816) 421-4460
 F: (816) 474-3447
 friesmeyer@seigfreidbingham.com
 sjohnson@seigfreidbingham.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

   I hereby certify that on the 28th day of February, 2014 a copy of the foregoing was filed electronically and was served on all parties of interest receiving electronic notices in the above-captioned proceedings through the Court's CM/ECF System. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, including:

  Arthur A. Benson II
  Jamie Kathryn Lansford
  Arthur Benson & Associates
  4006 Central Avenue
  P.O. Box 119007
  Kansas City, Missouri 64171-9007
  Fax: 816.531.6688
  abenson@bensonlaw.com
  jlansford@bensonlaw.com

  *Attorneys for Plaintiff*

          /s/ Shannon D. Cohorst Johnson
          Attorney for Defendant